# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| ERNEST SUMMERFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 5:09-cv-00132-JEO |
| | ) | |
| SAND MOUNTAIN PROPANE | ) | |
| GAS, INC., and UNITED | ) | |
| PROPANE GAS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

This is a case brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., in which the plaintiff, Ernest Summerford, seeks payment from his employer, defendants Sand Mountain Propane Gas, Inc. and United Propane Gas, Inc., for unpaid overtime wages and liquidated damages, as well as attorney's fee and costs pursuant to 29 U.S.C. §§ 207(a)(1) and 216(b). (*See* Complaint ("Compl."), Doc. 1). It is now before the court on the parties' "Joint Motion for Approval of Settlement, Stipulation of Facts, and Supporting Memorandum of Law." ("Joint Mot.," Doc. 15). The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c). (Doc. 16). For the reasons that follow, the court concludes that it cannot approve the parties' settlement or dismiss the action based on the limited materials and information now before the court. Accordingly, the court defers its ruling on those matters. To the extent that the parties' joint motion requests that their written settlement agreement be kept confidential and not be put in the record, the motion is due to be denied. Instead, this cause will be set for a hearing at which time the parties shall be required to offer their agreement and other materials or information sufficient to allow the court to make a meaningful assessment of

whether the settlement represents a fair and reasonable resolution of a bona fide dispute over

FLSA provisions.

## I.      BACKGROUND

In the complaint, the plaintiff alleges that he was employed by the defendants until 2008.[1]

During his employment, the plaintiff "regularly" worked many hours over forty in each work

week but was not paid overtime wages for that excess time, as required under the FLSA, *see* 29

U.S.C. § 207.  (Compl. at ¶¶ 3, 5, 6).  The complaint does not specify, however, the plaintiff's

hourly wage, how many overtime hours he claims to have worked, or any sum certain he says is

due.  Likewise, in the instant joint motion, the parties do not specify any of the circumstances

underlying the plaintiff's claim or the amount of the settlement or any allocation thereof towards

unpaid overtime, liquidated damages, and attorney's fees.  Rather, the parties simply stipulate

that a bona fide dispute existed under the FLSA, and that following discussions and negotiations

conducted by their respective representatives, they have reached a "fair and reasonable"

agreement, which reflects resolution of a bona fide dispute.  (Joint Mot.).  The parties further

state that the settlement agreement also provides that both parties are to keep the terms of the

agreement confidential.  *Id*. at 3.  As such, they delivered the actual settlement agreement to the

chambers of the undersigned, rather than filing the agreement in the record.

## II.     ANALYSIS

### A.      Court Review of FLSA Settlement Agreements

The FLSA provides that employees are generally entitled to receive overtime pay at one

---

[1]The plaintiff does not assert when his employment began with the defendants or even a period of time for which he
was employed by the defendants.

and one-half times their regular rate for all hours worked in excess of 40 per week.  *See* 29

U.S.C. § 207(a)(1).  An employer who violates the FLSA is liable to its employee for both

unpaid overtime compensation and for an equal amount in liquidated damages.  29 U.S.C. §

216(b).  In an action to recover unpaid overtime compensation, a court is further required to

award a prevailing plaintiff a reasonable attorney's fee and costs of the action.  *Id.*

In *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), the court

recognized that the provisions of the FLSA "are not subject to negotiation or bargaining between

employers and employees."  *Id.* at 1352 (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 65

S.Ct. 895, 902 (1945)).  This is so because to allow FLSA rights to be "abridged by contract or

otherwise waived ... would 'nullify the purposes' of the statute and thwart the legislative policies

it was designed to effectuate."  *Id.* (quoting *Barrentine v. Arkansas-Best Freight Syst.*, 450 U.S.

728, 101 S.Ct. 1437, 1444 (1981)); *see also Wethington v. City of Montgomery*, 935 F.2d 222,

229 (11th Cir. 1991).  Thus, employees may not generally agree privately with their employers to

waive or compromise their FLSA rights pertaining to either overtime wages owed or liquidated

damages.  *See Lynn's Food Stores*, 679 F.2d at 1352; *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108,

114-16 (1946); *see also Silva v. Miller*, 307 Fed. Appx. 349, 351 (11th Cir. 2009) ("The language

of the statute contemplates that 'the wronged employee should receive his full wages plus the

penalty without incurring any expense for legal fees or costs.'" (quoting *Maddrix v. Dize*, 153

F.2d 274, 275-76 (4th Cir. 1946)).

Where, as here, there has not been a payment supervised by the Department of Labor, *see*

29 U.S.C. § 216(c); *Niland v. Delta Recycling Corp.*, 377 F.3d 1244, 1247 (11th Cir. 2004), the

court in *Lynn's Food Stores* held that "there is only one context in which compromises of FLSA

back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court

which has determined that a settlement proposed by an employer and employees, in a suit

brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide

dispute over FLSA provisions." 679 F.2d at 1355.  That court explained:

> Settlements may be permissible in the context of a suit brought by
> employees under the FLSA for back wages because initiation of the action by the
> employees provides some assurance of an adversarial context.  The employees are
> likely to be represented by an attorney who can protect their rights under the
> statute.  Thus, when the parties submit a settlement to the court for approval, the
> settlement is more likely to reflect a reasonable compromise of disputed issues
> than a mere waiver of statutory rights brought about by an employer's
> overreaching.  If a settlement in an employee FLSA suit does reflect a reasonable
> compromise over issues, such as FLSA coverage or computation of back wages,
> that are actually in dispute; we allow the district court to approve the settlement in
> order to promote the policy of encouraging settlement of litigation.

*Id.*, 679 F.2d at 1354.

The primary focus of a court's inquiry in determining whether to approve an FLSA

settlement is to ensure that an employer does not take advantage of its employees in settling their

claim for wages and other damages due under the statute.  *Collins v. Sanderson Farms, Inc.*, 568

F. Supp. 714, 719 (E.D. La. 2008).

> In essence, the [c]ourt must ensure that the parties are not, via settlement of the
> plaintiff['s] claims, negotiating around the clear FLSA requirements of
> compensation for all hours worked, minimum wages, maximum hours, and
> overtime.  If no question exists that the plaintiff[ is] entitled under the statute to
> the compensation [he] seek[s] (and therefore to liquidated damages, as well), then
> any [compromised] settlement of such claims would allow the employer to
> negotiate around the statute's mandatory requirements.  Without a bona fide
> dispute, no [compromised] settlement could be fair and reasonable.  Thus some
> doubt must exist that the plaintiff[ ] would succeed on the merits through
> litigation of [his] claims.

*Id.* at 719-20.  Further, the "mere existence of an adversarial lawsuit" is not itself enough to

satisfy the requirement that a "bona fide dispute" exists. *Id.* at 720.  The presence of an attorney representing an FLSA plaintiff and the filing of a lawsuit makes the likelihood of a pressured settlement much lower than it would be otherwise. *See id.*; *Lynn's Food Stores*, 679 F.2d at 1354.  However, for the fairness inquiry to have any meaning, a court must do more than just take at face value the parties' assertion that the lawsuit involves a bona fide dispute over FLSA coverage or the extent of liability. *See Collins*, 568 F. Supp. 2d at 720.  But "once a bond fide dispute is found to exist, a continuum will be created in which the less persuasive the employee['s] arguments [or supporting evidence] for coverage [or the extent of liability] under the FLSA, the lower the proportion of the potentially uncompensated wages (plus liquidated damages) that would be necessary to make a settlement 'fair and reasonable.'" *Id.* at 720 n.6.

As the record now stands, the court cannot approve the parties' settlement.  In short, the parties have not presented the court with sufficient information to evaluate whether there actually is a bona fide dispute over FLSA overtime coverage or the extent of liability or whether the proposed settlement is fair and reasonable.  Indeed, the *sum total* of what the court knows at this point is that the parties are represented in this action by counsel who negotiated a settlement of a claim for overtime wages allegedly due the plaintiff for work performed sometime during his employment for some period of time until some point in 2008.  The court has not been advised, however, of *any* information regarding *any* of the following matters: (1) the plaintiff's title or position with the defendant or whether there are any circumstances that might support or rebut that the plaintiff was exempt from, or otherwise not subject to, FLSA overtime requirements; (2) the number of overtime hours that the plaintiff claims to have worked; (3) the time period(s) for which the plaintiff claims he was not paid overtime; (4) the plaintiff's alleged regular rate of pay

during the period(s) for which he seeks overtime; (5) circumstances that might tend to support or rebut a claim that the defendant's alleged violation was "willful," so as to extend the statute of limitations from two to three years, *see* 29 U.S.C. § 255(a); (6) the amount of overtime wages that the plaintiff is claiming in this action; (7) the nature of any potentially disputed legal or factual issues; or (8) how the settlement is being allocated as between wages, the liquidated damages, and an attorney's fee.  The presentation of materials regarding the fairness of an FLSA settlement should not be turned into a trial or a rehearsal of the trial.  *Collins*, 568 F. Supp. 2d at 720.  Yet, in order to fulfill its duty to scrutinize the settlement to evaluate whether it is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions," *Lynn's Food Stores*, 679 F.2d at 1355, the court cannot simply "take the parties' word for it," which is what the court is now being asked to do.

At a minimum, the court concludes that the parties settlement agreement should be filed as part of the court's record.  *See Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1263 (M.D. Ala. 2003) (holding that when an FLSA settlement is approved by the court, the settlement becomes part of the judicial record); *Bartelloni v. DeCastro* [No. 05-80910-CIV], 2007 WL 2155646, *1 (S.D. Fla. July 26, 2007) (recognizing that an FLSA settlement could not be approved without the agreement itself being reviewed by the court).  However, the court finds that the agreement, standing alone, is not sufficient to allow the court to conduct the fairness evaluation required under *Lynn's Food Stores*.  The parties' written agreement is in what is essentially standard form, stating the amount of the settlement, and containing a disclaimer by the defendant of any admission of liability or wrongdoing, with a release of all liability by the plaintiff.  While the agreement states that it constitutes a settlement of disputed FLSA issues, the

6

court must have enough information to glean at least a basic understanding of not only the terms of the proposed settlement but also the circumstances underlying the plaintiff's claim and the principal disputed factual and legal issues associated therewith in order to conduct a meaningful evaluation. That is, to say that under the settlement the plaintiff would receive, for example, $5,000, does not, standing alone, allow one to assess whether there is a genuine dispute over legal or factual issues or that such a settlement is "fair" or "reasonable." Rather, that task can only be undertaken by evaluating the settlement terms *in relation to* the substance of the plaintiff's claims and the defendants' potential defenses in light of their likely evidentiary support and the prevailing law. At this point, the court has no idea, frankly, of any of those matters. Accordingly, the parties will be ordered to present, along with the agreement, sufficient materials or information to allow the court to evaluate the settlement vis-á-vis the circumstances underlying the plaintiff's overtime claim, including the factual and legal issues that may have been in bona fide dispute.

**B.    Form of Proceedings and the Right of Public Access**

The next issues that the court must decide are: (1) the form of the proceedings by which the requisite information described above must be presented to the court and (2) whether to allow such proceedings to occur under seal or otherwise outside of public view, as the parties have jointly requested. The first issue is relatively straightforward and discretionary with the court. In essence, the court can have the parties appear at a hearing, file answers to interrogatories propounded by the court, and/or file other relevant documents, such as discovery responses or

affidavits.  Courts have employed variations and combinations of these methods in this context.[2]
While the court does not believe that there is truly any "wrong" choice, the court will set the
matter for a fairness hearing, for such seems the most expeditious course.

The more complex issue, and perhaps more important to at least one of the parties, is the
second matter, i.e., whether the public is due to be precluded from access to the settlement
agreement and other proceedings by which the parties would present the court with information
necessary to assess the fairness of the settlement.  The parties' joint motion indicates that the
agreement contains confidentiality clause, and the parties have expressed their mutual desire to
maintain the confidential nature of the terms of the agreement.   The court would presume that
such desire for privacy likewise extends to other documents, testimony, information, or
proceedings that would illuminate the terms of the settlement or the circumstances underlying the
plaintiff's overtime claim.   In theory, the court could accede to the parties' wishes by sealing the
settlement agreement and any related filings made in support of its approval and excluding the
public from the fairness hearing and sealing the transcript.  However, as explained below, such a
course is not warranted in the context of securing necessary judicial approval of an FLSA
settlement, despite the parties' confidentiality agreement.

It is well established that there is a common-law right of public access to judicial
proceedings.  *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007).  Based upon this

---

[2]*See, e.g., Stalnaker,* 293 F. Supp. 2d at 1263 (approving settlement after "speaking with" the FLSA plaintiff); *Snell v. City of Slocomb* [No. 1:07cv898-MHT], 2008 WL 2945599, *1 (M.D. Ala. July 29, 2008) (approving settlement after a hearing); *Shannon v. Saab Training USA, LLC* [No. 6:08-cv-803-Orl-19DAB], 2009 WL 1773808, *2 (M.D. Fla. June 23, 2009) (considering submissions by the parties and holding an evidentiary hearing); *Longcrier v. HL-A Co.*, [No. 08-0011-WS-C], 2009 WL 1118906, *1 (S.D. Ala. April 27, 2009) (noting that the parties had "furnished the Court with documentation and information to facilitate the review/approval process"); *Younger v. Accent American Staff Services, Inc.* [No. 6:08-cv-1671-Orl-31DAB], 2009 WL 1810717, *2 (M.D. Fla. June 24, 2009) (approving settlement based upon review of the complaint, "Answer to Court Interrogatories, and [a] brief in support of the Proposed Consent Judgment").

right, the Eleventh Circuit has recognized a "general presumption that criminal and civil actions should be conducted publicly," *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001), for a trial courtroom is typically characterized as "'a public place where the people generally–and representatives of the media–have a right to be present.'" *Newman v. Graddick*, 696 F.2d 796, 800-01 (11th Cir. 1983) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 578 (1980) (Burger, J.) (plurality opinion)); *see also Sweeney v. Athens Reg. Med. Ctr.*, 917 F.2d 1560, 1565 n.5 (11th Cir. 1990) ("'What transpires in the courtroom is public property.'" (quoting *Craig v. Harney*, 331 U.S. 367, 374 (1947)). Accordingly, courts have held that the public is generally authorized to attend not only civil trials but also pre-trial and post-trial courtroom hearings.  *See Wilson v. American Motors Corp.*, 759 F.2d 1568, 1570 (11th Cir. 1985) ("[A]bsent some exceptional circumstances, trials are public proceedings."); *Newman,* 696 F.2d at 801 (holding that civil trials, and at least some pre- and post-trial hearings, pertaining to the release or incarceration of prisoner and their conditions of confinement are presumptively open to the public); *see also Matter of Continental Illinois Securities Litigation*, 732 F.2d 1302, 1308 (7th Cir. 1984); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983); *Publicker Indust. v. Cohen*, 733 F.2d 1059, 1066-67 (3d Cir. 1984); *Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988); *Westmoreland v. CBS*, 752 F.2d 16, 23 (2d Cir. 1984); *In re Iowa Freedom of Information Council*, 724 F.2d 658, 661 (8th Cir. 1983).

     The common-law right of access also includes the right to inspect and copy public records and documents.  *Romero*, 480 F.3d at 1245.  When applying this right of access, courts "traditionally distinguish between those items which may be properly considered public or

judicial records and those that may not; the media [and the public] presumptively have access to the former, but not to the latter." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001). In practical terms, the Eleventh Circuit has drawn the line such that material filed in connection with any substantive pretrial motion unrelated to discovery is subject to the common law right of access. *See id.* at 1312; *Romero*, 480 F.3d at 1245-46. Accordingly, a "motion that is 'presented to the court to invoke its powers or affect its decisions' whether or not characterized as dispositive," is presumed to be subject to public access. *Romero*, 480 F.3d at 1246 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)).

"In most cases, when the parties settle, the court does not examine or approve their agreements; the settlements are purely private contracts." *Stalnaker,* 293 F. Supp. 2d at 1263. Thus, settlement agreements do not typically become either part of the court record or subject to the common-law right of public access. *See Jessup v. Luther*, 277 F.3d 926, 928-29 (7th Cir. 2002). However, as recognized in *Lynn's Food Stores*, the settlement of an FLSA claim is not a purely private matter; because employers and employees may not contract around minimum wage or overtime requirements, they are not permitted simply to settle disputed FLSA claims by agreement amongst themselves. *See* 679 F.2d at 1352. Rather, a privately negotiated FLSA settlement will not have preclusive effect unless it is submitted to, and approved in a stipulated judgment by, the court, which has a duty to vindicate "the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.'" *Stalnaker*, 293 F. Supp. 2d at 1264 (quoting *O'Neil*, 324 U.S. at 706-07). As such, courts addressing the issue appear to be unanimous in holding that where litigants move the court to approve their FLSA settlement under *Lynn's Food Stores*, the settlement is deemed part of the

10

judicial record and presumed subject to the public right of access.  *See, e.g., Stalnaker*, 293 F. Supp. 2d at 1263-64; *Boone v. City of Suffolk*, 79 F. Supp. 2d 603, 609-10 (E.D. Va. 1999); *Hanson v. Wells Fargo Bank, N.A.* [No. 08-80182-Civ.], 2009 WL 1490582, *1 (S.D. Fla. May 26, 2009); *Prater v. Commerce Equities Mgmt. Co.* [No. H-07-2349], 2008 WL 5140045, *9 (S.D. Tex. Dec. 8, 2008); *Velez v. Family Dollar Stores of Fla., Inc.* [No. 6:08-cv-1120-Orl-31KRS], 2008 WL 4097691, *1 (M.D. Fla. Sept. 3, 2008); *Bartelloni*, 2007 WL 2155646, *1; *cf. Romero*, 480 F.3d at 1246 (noting in dicta that the "common law right [of public access] applies to [a] motion to approve [a] settlement agreement" (citing *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 164 (3d Cir. 1993)); *Jessup,* 277 F.3d at 929 ("The public has an interest in knowing what terms of settlement a federal judge would approve and perhaps therefore nude the parties to agree to."); *Bank of Amer. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhous Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986) ("[T]he common law presumption of access applies to motions filed in court proceedings and the settlement agreement ... filed and submitted to the district court for approval.").  And because a request to approve an FLSA settlement seeks to invoke a substantive judicial action to which the right of access applies, access would also be presumed as to any other documents or materials filed with the court in support of such approval.  *See Romero*, 480 F.3d at 1245-46; *Chicago Tribune*, 263 F.3d at 1312; *see also Federal Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408-09 (1st Cir. 1987) (right of access applied to document on which a court relied in approving a consent degree because that approval settled a civil enforcement action).

    Even to the extent that it is applicable, however, the common-law presumption of open access to judicial proceedings and records is not absolute.  The Eleventh Circuit has explained:

The common law right of access may be overcome by a showing of good cause, which requires balancing the asserted right of access against the other party's interest in keeping the information confidential.  Whether good cause exists is decided by the nature and character of the information in question.  In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

*Romero*, 480 F.3d at 1246 (citations, internal quotation marks, brackets, and ellipses omitted).

The only justification offered by the parties at this juncture for keeping the settlement agreement out of the record or under seal is their apparent mutual desire to keep the terms of their settlement confidential.  However, such does not constitute cause to overcome the presumption of public access in this context, and the court, therefore, denies the parties' request to submit a copy of the settlement agreement to the court outside the record or to have the agreement placed in the record under seal.[3]  *See Stalnaker*, 293 F. Supp. 2d at 1264; *Boone*, 79 F. Supp. 2d at 609-10; *Hanson*, 2009 WL 1490582, *1; *Prater*, 2008 WL 5140045, *9-10; *cf. Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) (reversing district court's order to seal pleadings, orders, and summary judgment evidence based upon the parties' request

---

[3]It does not matter that no third party has objected here to the parties' request to keep the settlement out of the record or under seal.

[T]he presumption of openness does not depend on the media's being interested in a particular case. *In re Estate of Martin Luther King, Jr. v. CBS,* 184 F. Supp. 2d 1353, 1363 (N.D. Ga. 2002).  Rather, the presumption is based on the nature of democracy and the "citizen's desire to keep a watchful eye on the workings of public agencies." *Nixon* [*v. Warner Communications, Inc.,* 435 U.S. 589, 598 (1978)].  A judge is "the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal" any part of the record.  For this reason, a judge "may not rubber stamp a stipulation to seal the record." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 945 (7th Cir. 1999).

*Stalnaker*, 293 F. Supp. 2d at 1263-64.

12

that the court do so as an integral part of a negotiated settlement between them, facilitated by the court); *Wilson*, 759 F.2d at 1571 (holding that district court erred by granting the defendant's unopposed motion to seal the entire file, including the trial transcript, to facilitate the parties settlement agreement reached during trial but prior to judgment).

## III.   CONCLUSION

Based on the foregoing, the court **DEFERS** ruling upon the parties' joint motion (doc. 15) insofar as it requests the court to approve their FLSA settlement agreement and to dismiss the action.  The parties' joint motion is **DENIED** to the extent that it requests that the parties be permitted to keep the agreement out of the court record  The court hereby **ORDERS** that the parties' joint motion is **SET** for a hearing at **10:00 a.m., Friday, July 31, 2009, Courtroom 3, Hugo Black U.S. Courthouse, Birmingham, Alabama**, at which time the parties shall present the court with material or information necessary to evaluate whether their settlement represents a fair and reasonable resolution of a bona fide dispute over FLSA coverage or the extent of liability.

**DONE** this 20th day of July, 2009.

*John E. Ott*

**JOHN E. OTT**
United States Magistrate Judge

13